IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| RANDY L. VALENTINE, | ) Civil Action No.: 4:05-cv-00485-HMH-TER |
| | ) |
| Plaintiff | ) |
| | ) |
| vs | ) |
| | ) |
| OFC. D. RICHARDSON; LT. PRESSLY; | ) |
| OFC. R. GOINS; OFC. BENNET; OFC. | ) |
| LABONTE; OFC. CREASY; OFC. | ) REPORT AND RECOMMENDATION |
| GARDO; OFC. WILLIAMS; OFC. | ) |
| YOUNGBLOOD; OFC. JONATHAN | ) |
| TALLY; SGT. NATION; OFC. B. JONES; | ) |
| OFC KRISTY MCGRAW; NURSE GAY; | ) |
| NURSE JUDY; DR. LEGEASSE TEBEJE; | ) |
| DR. JOHN CALEB PEASE; AND | ) |
| ATTORNEY LAWRENCE CRANE; SUED | ) |
| IN THEIR INDIVIDUAL CAPACITIES; | ) |
| AND THE GREENVILLE HOSPITAL | ) |
| SYSTEM; AND GREENVILLE COUNTY, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## I. PROCEDURAL BACKGROUND

The plaintiff, Randy Valentine ("plaintiff/Valentine"), filed this action under 42 U.S.C. § 1983[1] on February 25, 2005. He filed an amended complaint on July 5, 2005. Plaintiff alleges that his constitutional rights were violated. Plaintiff filed a motion for summary judgment on January 4, 2006, as to defendant Lawrence Crane. (Doc. #61). Crane filed a response to the motion on January 24, 2006, and filed a motion for summary judgment. Because the plaintiff is proceeding pro se, he

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

was advised on or about January 25, 2006, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th. Cir. 1975), that a failure to respond to the defendants' motion for summary judgment with additional evidence or counter affidavits could result in dismissal of his complaint. The plaintiff filed a response on March 1, 2006.

## MOTION FOR SUMMARY JUDGMENT BY LAWRENCE CRANE

### A. DISCUSSION

#### 1. ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

In his amended complaint, plaintiff alleges that on June 16, 2003, his attorney Lawrence Crane ("Crane") in his criminal case came to the Greenville County Detention Center ("GCDC") to see him. Plaintiff alleges that he did not want to speak to or see his attorney. As a result, plaintiff alleges that Crane instructed the officers at the GCDC to bring plaintiff to him. Therefore, plaintiff alleges that the defendants Tally Goins, Bennet, Williams and Creasy "went to the plaintiffs cell in conspiracy with Crane to bring plaintiff to see his lawyer illegally which defendants were wearing riot gear." (Amended complaint, p. 9). Plaintiff alleges that as a result of his attorney conspiring with the officers to bring him to his attorney, he was beaten, taken out of his cell, placed in a restraint chair, and then taken to see his lawyer after the assault. Thus, plaintiff argues that Crane acted under color of state law when he had the officers bring the plaintiff to him against his will which was done maliciously and sadistically. Plaintiff alleges these actions constitute a civil conspiracy against plaintiff's rights and a denial of due process and violation of the Fourteenth Amendment. (Amended complaint p. 16).

Plaintiff requests an award of two hundred thousand ($200,000.00) dollars against defendant

Crane for violating his federal constitutional rights.

Defendant Crane argues that at all times he was acting as plaintiff's attorney for purposes of criminal matters pending against plaintiff in the Court of General Sessions. Crane asserts that he was not acting under color of state law on June 16, 2003, he did not order employees of GCDC to bring plaintiff to him against plaintiff's will, he did not order employees to place plaintiff in a restraint chair, and did not conspire with anyone at the GCDC to assault plaintiff or violate his constitutional rights.

## 2.  STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).  The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

3

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.  See Fed. R. Civ. P. 56(c).  Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."  In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof.  Celotex, 477 U.S. at 322-323.

### 3.  LEGAL ANALYSIS APPLICABLE TO PRETRIAL DETAINEES

Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment.  Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987).  The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions . . . the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law.  Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment (citations omitted).

A pretrial detainee may not be punished.  An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual."  Bell v. Wolfish, 441 U.S. 520

(1979). Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime. Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials. If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld. Bell, 441 U.S. at 538.

### 4. ANALYSIS

As previously discussed, defendant Lawrence Crane was plaintiff's attorney representing him on criminal charges pending in General Sessions Court.[2]

In order to state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege that: (1) the defendant(s) deprived him or her of a federal right, and (2) did so under color of state law or federal law. *See* Gomez v. Toledo, 446 U.S. 635, 640 (1980); and American Mfr. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50-52, 1999 U.S. LEXIS® 1711 (1999). An attorney, whether retained, court-appointed, or a public defender, does not act under color of state law, which is a jurisdictional prerequisite for any civil action brought under 42 U.S.C. § 1983. *See* Deas v. Potts, 547 F.2d 800 (4th Cir. 1976)( a private attorney); Hall v. Quillen, 631 F.2d 1154, 1155-56 & nn. 2-3 (4th Cir. 1980), *cert. denied*, 454 U.S. 1141 (1982)(court-appointed attorney); Polk County v. Dodson, 454 U.S. 312, 317-24 & nn. 8-16 (1981)(public defender).

As defendant Crane was plaintiff's attorney for pending criminal charges, he did not act

---

[2] It is not clear from defendant Crane or plaintiff if Crane was retained or if he was his court appointed attorney. However, the analysis is the same either way.

5

under color of state law.

As stated, plaintiff argues that defendant Crane conspired with the officers when he told them to bring plaintiff to see him against his will and, thus, acted under color of state law.

In the South Carolina District Court case of Kollyns v. Doe, 2003 WL 22937925 D.S.C. 2003, the Court held the following:

> To establish a civil conspiracy under § 1983, a plaintiff must present evidence that the defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in deprivation of a constitutional right. Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir.1996). A plaintiff must come forward with specific evidence that each member of the alleged conspiracy shared the same conspiratorial objective. *Id.* To survive a summary judgment motion, a plaintiff's evidence must reasonably lead to the inference that the defendants came to a mutual understanding to try to "accomplish a common and unlawful plan." *Id.* A plaintiff's allegation must amount to more than "rank speculation and conjecture," especially when the actions are capable of innocent interpretation. *Hinkle* at 422. The plaintiff must show that the defendants possessed an intent to commit an unlawful objective. *Id.* Here, Plaintiff has presented nothing other than his own speculation that there was a conspiracy.

Id.

"Acquiescence can amount to a conspiracy agreement when . . . one . . . officer watches an open breach of the law and does nothing to seek its prevention." Hafner v. Brown, 983 F.2d 570, 578 (4th Cir.1992). Nonetheless, isolated acts by defendants that fail to evidence a shared understanding will not suffice to survive a motion for summary judgment. See Hinkle, 81 F.3d at 421-23.

Plaintiff has failed to provide specific evidence of a conspiracy. Plaintiff's allegations that just because his attorney visited at the GCDC on June 16, 2003, and asked to see him or told the guards to bring plaintiff to him, does not qualify as evidence that Crane conspired with the officers

to allegedly beat him and place him in a restraint chair or bring plaintiff to him against his will. Plaintiff asserts that if defendant Crane had not conveyed to the "officers to have plaintiff brought to him, I would have never been assaulted." (See plaintiff's "affidavit 1" attached to his memorandum). Defendant Crane states that he did not have any control over the officer's alleged actions or the GCDC employees and was not employed by the GCDC. There is no evidence to the contrary. Therefore, plaintiff's conspiracy argument must fail and defendant was not acting under color of state law.

Additionally, defendants Richardson, Pressly, Goins, Bennett, LaBonte, Creasy, Gardo, Williams, Youngblood, Tally, Nation, Jones, Does, McCraw and Greenville County submitted a copy of a video taken on June 16, 2006, of the alleged incident in support of their motion for summary judgment. A review of the video by the undersigned reveals that officers requested that plaintiff comply with instructions to turn around to be handcuffed so that he could be taken to court and he refused to cooperate. Plaintiff kept saying he was not suppose to go to court because it was Sunday. The officers tried to reason with plaintiff and convince him that it was Monday and he had to be taken to the third floor for a video hearing with the Judge. One officer even showed plaintiff a copy of the newspaper with the date Monday, June 16, 2003, but plaintiff continued to refuse to comply with their instructions to be handcuffed. They explained to plaintiff that he had to go to third floor for video court and, if he did not comply, they would have to use force to handcuff him and take him to court. Plaintiff continued to refuse. Therefore, the officers came with their riot gear and when plaintiff saw them he said he did not want that to happen. The officer told him they did not either so he was given another chance to comply. Plaintiff was again asked would he agree to be handcuffed and comply with their instructions but plaintiff still refused. Therefore, he was told that

7

the officers were going to enter and do not resist. The officers entered the cell, brought plaintiff to the floor without incident and handcuffed him. They then placed him in the restraint chair and one officer called to have the nurse meet them on the third floor to check the restraints. As the officers were rolling plaintiff to the elevator to carry him to third floor, plaintiff himself stated that he wanted to see his attorney. While taking plaintiff to the third floor in the restraint chair, one officer told plaintiff that they just want to get him to court for the Judge to ask him some questions and then they would take him back. When they arrived on third floor the nurse was there to check his blood pressure and the restraints. The nurse instructed the officers that a few of the restraints needed to be readjusted because they were too tight. The officers complied. The nurse then rechecked the restraints and found that they were fine. The officers then rolled plaintiff into the room for video conference with the Judge. The actual conference was not video taped. It is not clear if plaintiff's attorney was there at the time. Afterwards, the video reveals that plaintiff was taken back to where he was removed and the restraints were removed from his person.

Thus, plaintiff was forcibly removed to be taken for video court before the judge. There was never any indication by the officers that defendant Crane, plaintiff's attorney, had requested that they bring plaintiff to him. Further, a review of the video reveals that the amount of force used was reasonable and minimal.

Accordingly, it is recommended that defendant Crane's motion for summary judgment be granted.

### III.  PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

As previously stated, plaintiff filed a motion for summary judgment along with a

memorandum and attachments against defendant Crane on January 4, 2006. Defendant filed a response. Based on the above analysis, it is recommended that plaintiff's motion for summary judgment be denied.

## IV. CONCLUSION

Based on the above stated reasons it is **RECOMMENDED** that the motion filed by the defendant Lawrence Crane for summary judgment (document #64) be **GRANTED** and that this matter be **DISMISSED** as to this defendant.

Further, it is **RECOMMENDED** that plaintiff's motion for summary judgment as to this defendant (document # 61) be **DENIED** based on the above reasons.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

August 18, 2006
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

## Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"
## &
## The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the ten-day period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. *See* Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger de novo review"). This notice, hereby, apprises the plaintiff of the consequences of a failure to file specific, written objections. *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

Larry W. Propes, Clerk<br>
United States District Court<br>
Post Office Box 2317<br>
Florence, South Carolina 29503