IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| RANDY L. VALENTINE, | ) Civil Action No.: 4:05-cv-00485-HMH-TER |
| | ) |
| Plaintiff | ) |
| | ) |
| vs | ) |
| | ) |
| OFC. D. RICHARDSON; LT. PRESSLY; | ) |
| OFC. R. GOINS; OFC. BENNET; OFC. | ) |
| LABONTE; OFC. CREASY; OFC. | ) REPORT AND RECOMMENDATION |
| GARDO; OFC. WILLIAMS; OFC. | ) |
| YOUNGBLOOD; OFC. JONATHAN | ) |
| TALLY; SGT. NATION; OFC. B. JONES; | ) |
| OFC KRISTY MCGRAW; NURSE GAY; | ) |
| NURSE JUDY; DR. LEGEASSE TEBEJE; | ) |
| DR. JOHN CALEB PEASE; AND | ) |
| ATTORNEY LAWRENCE CRANE; SUED | ) |
| IN THEIR INDIVIDUAL CAPACITIES; | ) |
| AND THE GREENVILLE HOSPITAL | ) |
| SYSTEM; AND GREENVILLE COUNTY, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## I. PROCEDURAL BACKGROUND

The plaintiff, Randy Valentine ("plaintiff/Valentine"), filed this action under 42 U.S.C. § 1983[1] on February 25, 2005. He filed an amended complaint on July 5, 2005. Plaintiff alleges that his constitutional rights were violated. Defendants Legesse Tebeje, M.D., John Caleb Pease, M.D., Nurse Gay, Nurse Judy and Greenville Hospital System filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure along with a memorandum in support

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

of that motion on October 13, 2005. (Document #55). Because the plaintiff is proceeding pro se, he was advised on or about October 14, 2005, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th. Cir. 1975), that a failure to respond to the defendants' motion for summary judgment with additional evidence or counter affidavits could result in dismissal of his complaint. The plaintiff filed a response on February 27, 2003.

## II. MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS TEBEJE, PEASE, GAY, JUDY, AND GREENVILLE HOSPITAL SYSTEM

### A. DISCUSSION

#### 1. ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

The plaintiff alleges that his constitutional rights were violated by these defendants because of numerous allegations. The following is a synopsis of plaintiff's allegations as to defendants Dr. Tebeje, Dr. Pease, Nurse Gay, Nurse Judy, and Greenville Hospital System ("defendants"):

> Plaintiff alleges that while a pretrial detainee at the Greenville County Detention Center ("GCDC"), several officers employed by the GCDC entered his cell and "brutally assaulted him in a vicious manner by shooting the plaintiff with stun guns, striking him with billy clubs, beating him with their fist, kicking him with boots on, and choking him while plaintiff was defenseless and helpless." (Amended complaint, p. 5). Plaintiff alleges that he was beaten unconscious by the officers during this "brutal and atrocious attack." (Amended complaint, p. 5). Plaintiff alleges that as a result of this attack, the stress caused him to have violent seizures. Plaintiff alleges that as a proximate result of the assault, he was taken to the Greenville Memorial Hospital on June 8, 2003, for treatment. Plaintiff alleges that on June 10, 2003, while he was restrained in the hospital bed with regulation hospital restraints, "Officer Pressly, without written or verbal authorization from the plaintiff's doctor had the hospital regulations restraints removed from the plaintiff's person and he put metal handcuffs on the plaintiff to restrain him to the hospital bed. Plaintiff alleges that Nurse Gay was in conspiracy with defendant

> Pressly in that she aided him in restraining plaintiff to the hospital bed in metal hand cuffs without the plaintiff's doctor's written or verbal authorization. Plaintiff also alleges that Nurse Judy knew plaintiff was afraid of needles but tortured him by placing several needles in his hand while restrained to the hospital bed in metal cuffs. Thus, plaintiff alleges that Nurse Judy was also acting in conspiracy with the officers. Further, plaintiff alleges that defendant Dr. Legesse Tebeje in conspiracy with the officers from GCDC "wrote a false report stating that plaintiff has a history of seizures and plaintiff does not." (Amended complaint, p. 8). Plaintiff alleges that Dr. Tebeje was acting to cover up the brutal assault inflicted upon the plaintiff at the jail.

Plaintiff also alleges that defendant Dr. Pease allowed the officers from the GCDC to restrain him in the hospital bed in metal cuffs without written authorization and against hospital policy with metal hand cuffs and shackles. Plaintiff seeks actual damages against each defendant.

As previously stated, defendants filed a motion for summary judgment on October 13, 2005, to which the plaintiff has responded. The defendants argue that their motion for summary judgment should be granted because the plaintiff has failed to present a prima facie §1983 claim and has failed to establish a deprivation of a constitutional right.

## 2.  STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services,

901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

### 3. LEGAL ANALYSIS APPLICABLE TO PRETRIAL DETAINEES

Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment. Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987). The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72:

4

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions . . . the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment (citations omitted).

A pretrial detainee may not be punished. An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual." Bell v. Wolfish, 441 U.S. 520 (1979). Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime. Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials. If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld. Bell, 441 U.S. at 538.

### 4. PRIMA FACIE §1983/COLOR OF STATE LAW

Defendants argue that plaintiff has failed to present any evidence that the employees of defendant Greenville Hospital System ("GHS") were state actors acting under color of state law. Specifically, defendants argue that plaintiff has failed to identify any factors to show that a finding of state action would be appropriate in this case and he has failed to present any evidence that any policy, procedure or custom of the state contributed to the deprivation of his constitutional rights. Defendants attached a copy of the GHS Policy Regarding Restraint of Inmates which states the Greenville Hospital System with respect to the restraint of inmates indicates that inmates are to be

5

restrained at the discretion of corrections officials. (Defendants' exhibit C). In this case, defendants assert that plaintiff was originally placed in arm and leg shackles by corrections officers, not employees of GHS; he arrived at the Greenville Hospital System in leg and arm shackles in the custody of officers of the GCDC; and he remained shackled at various times throughout his hospital admission at the discretion of corrections officials. Defendants argue that at no time did GHS employees participate in that exercise of discretion.

Defendants submitted the affidavit of Dr. Legesse Tebeje ("Tebeje") who attests that his medical specialty is Internal Medicine and he is employed by the GHS. Tebeje attests that he was one of the healthcare providers that provided treatment and care to plaintiff during his admission to the GHS from June 8, 2003 until June 13, 2003. Tebeje attests that plaintiff presented to the emergency room of the GHS on June 8, 2003, and was brought from the GCDC in leg and arm shackles and in the custody of corrections officers employed by the GCDC. Tebeje attests that it is the GHS hospital policy and procedure that inmates brought to the GHS be restrained at the discretion of correction officers and at the discretion of the correction officials, plaintiff remained restrained at various times throughout his admission. Tebeje stated that a medical history provided by correction officers at the time of his admission indicated that plaintiff had suffered a prolonged seizure at the GCDC prior to his arrival at GHS Emergency Room. Tebeje attests that a neurological exam revealed plaintiff was unable to follow lights for extra-ocular testing and was barely arousable. Tebeje states that plaintiff was started on IV fluids and IV Cerebrex, that his renal function was monitored, his blood cultures were checked twice, he was started on Rocephin and listed a number of tests that were ordered. Based on the laboratory results, physical examination, clinical findings, and history provided by correction department officers, and witnessed seizure in the Emergency

Room, plaintiff was diagnosed with a seizure disorder. Further, Tebeje attests that plaintiff was also diagnosed with a postictal psychosis that manifested itself in aggressive behavior, refusing medications, pulling out IV access, and urinating on a correctional officer. In addition to the above, plaintiff had a second diagnosis of dehydration, renal insufficiency, leukocytosis, hypokalemia, medical noncompliance and a history of polysubstance abuse. Tebeje attests that during his admission to the hospital, plaintiff's medical conditions were promptly and properly treated with appropriate IV medications and other therapies, and he was discharged back to the GCDC in the custody of the officers with appropriate discharge instructions. Tebeje states that all medical therapies administered to plaintiff, including the use of needles and IV medications, were medically necessary to treat his multiple medical conditions. In his medial opinion, Tebeje attests that the treatment and care rendered to plaintiff by the nurses, doctors and other healthcare providers employed by the GHS was appropriate, consistent with Hospital policies and procedures, and consistent with the standard care of nurses and physicians practicing under the same or similar circumstances. (Affidavit of Dr. Tebeje).

      Defendants also attached a copy of plaintiff's medical record from GHS. It is noted that the doctor was informed that plaintiff had a prolonged seizure at the GCDC and had at least three or four minutes of seizing in the Emergency Room. It was stated that "we are not aware if this patient has a history of a chronic seizure disorder." The physical examination was normal except for the neurologic examination in that he would not follow lights for extraocular muscle testing. It was also noted that the extremities examination revealed the extremities had no cyanosis, clubbing or edema and "patient will wiggle his toes and his hands, even though he is in chains at this time." The impression that Dr. Pease listed was "seizure disorder of questionable new onset" not "history of

seizure disorder" as plaintiff alleged. (Medical records from GHS, attachment 55-4). It was also noted in the discharge papers that "[b]ecause the patient is clearly a high-risk patient, as far as we are concerned here," he would be transferred back to the GCDC. (Discharge summary p. 1). It was also stated that he was being discharged back to the prison officers. It was also noted that the GCDC has a medical wing and Ms. McCraw promised they would supervise plaintiff and would try to get him to take his medication. He was discharged with instructions of a regular diet and unrestricted level of activity. (Medical record, discharge summary p. 2).

Further, defendants assert that the relationship between plaintiff and the employees of GHS was one of physician and patient relationship and the actions by GHS employees in connection with plaintiff's treatment and care were based on GHS policies and procedures and standards of care applicable to physicians and nurses acting under similar circumstances. Defendants assert that "this health provider/patient relationship between Mr. Valentine and GHS employees is a private one, governed by hospital procedure and sound medical practice rather than dictates of the state government. Mr. Valentine has presented no evidence that any employee of GHS acted 'under color of state law.'" (defendants' memorandum p.6).

In his response in opposition, plaintiff argues that he has not alleged that the employees of defendant GHS violated his constitutional right's by unlawfully restraining him with shackles and metal handcuffs as stated by defendants. Plaintiff contends that he has "alleged that Nurse Gay acted under color of state law when she acted jointly with officers from the GCDC to remove the plaintiffs regulation restraint's and replaced them with metal handcuffs and shackles." (Doc. #60, p. 5). Plaintiff asserts that the "the graveman of the plaintiff's complaint in the regard of civil conspiracy is that employees of the hospital acted jointly and conspired with officers from the GCDC to deprive

the plaintiff of his federal constitutional right's by acting jointly to restrain him in the bed with metal restraints and sticking needles in the plaintiffs person without need or provocation." (Doc. # 60, p. 11). Plaintiff asserts that the nurses and the doctors knew that he was being held in metal restraints and did nothing to inform the authorities or higher officials that he was being held in four point metal restraints. Plaintiff contends that as the nurses and doctors witnessed this constitutional deprivation and did nothing to curtail the act, a civil conspiracy took place.

Plaintiff attached his affidavit along with a copy of the hospital log from the GCDC which he alleges shows that Nurse Gay acted jointly with an officer of the GCDC to restrain him with metal shackles and cuffs. However, a review of the one page plaintiff submitted reveals that the officer noted he notified Lt. Pressley that "Nurse Gay wants waist restraints removed Per Lt Pressley I can remove waist restraints and place handcuffs on the inmate." ( Doc. #60-2). It was also noted on the last line of the one page plaintiff submitted that "I/m Valentine became disorderly." (Doc. # 60-2).

Plaintiff has submitted five documents entitled affidavits from himself in response to the motion for summary judgment along with several attachments. Plaintiff asserts that Nurse Gay acted under color of state law when she assisted the officer in placing restraints on plaintiff and, thus, was in conspiracy with the officer.

Plaintiff cites the case of Dennis v. Sparks, 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980) to support his argument. Dennis, addressed an issue of whether or not a claim may be maintained against the private parties even when the government official's actions are protected by judicial immunity.

In order to state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege that: (1) the defendant(s) deprived him or her of a federal right, and (2) did so under color of state law or federal

9

law. *See* Gomez v. Toledo, 446 U.S. 635, 640 (1980); and American Mfr. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50-52, 1999 U.S. LEXIS® 1711 (1999).

As previously stated , in plaintiff's conspiracy argument, he alleges defendants acted under color of state law because Nurse Gay acted jointly and conspired with the officer in placing him in metal shackles and the other defendants did nothing to curtail this violation.

In the South Carolina District Court case of Kollyns v. Doe, 2003 WL 22937925 (D.S.C. 2003), the Court held the following:

> To establish a civil conspiracy under § 1983, a plaintiff must present evidence that the defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in deprivation of a constitutional right. Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir.1996). A plaintiff must come forward with specific evidence that each member of the alleged conspiracy shared the same conspiratorial objective. *Id.* To survive a summary judgment motion, a plaintiff's evidence must reasonably lead to the inference that the defendants came to a mutual understanding to try to "accomplish a common and unlawful plan." *Id.* A plaintiff's allegation must amount to more than "rank speculation and conjecture," especially when the actions are capable of innocent interpretation. *Hinkle* at 422. The plaintiff must show that the defendants possessed an intent to commit an unlawful objective. *Id.* Here, Plaintiff has presented nothing other than his own speculation that there was a conspiracy.

Id.

A private party involved in a conspiracy with a state actor can be liable under §1983. However, to sustain such a claim, the plaintiff must allege facts showing an agreement or meeting of the minds between the state actor and the private actor to engage in a conspiracy to deprive the plaintiff of a constitutional right. To establish liability through conspiracy, a plaintiff must demonstrate that: (1) State official and private individual reached an understanding to deprive the

10

plaintiff of his constitutional rights, and (2) the individual was a willful participant in joint activity with the State or its agents. Hessami v. Corporation of Ranson, 170 F.Supp.2d 626 (N.D.W. Va., 2001) (internal cites omitted).

In the recent case of Lee v. SCDC; DHEC, 2006 WL 1751833 (D.S.C.), the court stated "To survive a summary judgment motion, a plaintiff's evidence must reasonably lead to the inference that the defendants came to a mutual understanding to try to 'accomplish a common and unlawful plan.'" Id. Citing Hinkle, 81 F.3d at 421.

Clearly, plaintiff does not allege, and the evidence does not support, that Nurse Gay participated in the decision to place plaintiff in handcuffs and leg irons. Plaintiff presents his own affidavit that Nurse Gay merely assisted law enforcement in securing one arm with a handcuff. This is insufficient to constitute a conspiracy to violate his constitutional rights. Likewise, his claim that other defendants participated in the conspiracy by failing to act is without merit. The appropriate modality of security was left to the discretion of law enforcement. Plaintiff's argument that defendants participated in a conspiracy to exercise that discretion and commit the overt act of restraining plaintiff in an allegedly unconstitutional way by allowing law enforcement to exercise such discretion amounts to nothing more than speculation.[2]

Accordingly, the defendants' motion for summary judgment should be granted.

---

[2] Plaintiff also asserts that Nurse Judy stuck needles in his hand for no reason. Clearly, the evidence provides that an IV was inserted in his hand and blood samples were taken. Plaintiff fails to present competent evidence that Nurse Judy's actions were not medically necessary.

### 5. STATE LAW CLAIMS

Because plaintiff's claims under §1983 fail, the court should decline to exercise supplemental jurisdiction over plaintiff's remaining state law claims. *See* 28 U.S.C. 1367(c).

### III. CONCLUSION

Based on the above stated reasons it is **RECOMMENDED** that the motion filed by the defendants Tebeje, Pease, Gay, Judy, and GHS for summary judgment (document #55) be **GRANTED** and that this matter be **DISMISSED** as to these defendants.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

August 18, 2006
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

## Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"
## &
## The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the ten-day period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. *See* Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the plaintiff of the consequences of a failure to file specific, written objections. *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

Larry W. Propes, Clerk  
United States District Court  
Post Office Box 2317  
Florence, South Carolina 29503