IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| RANDY L. VALENTINE, | ) | Civil Action No.: 4:05-cv-00485-HMH-TER |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs | ) | |
| | ) | |
| OFC. D. RICHARDSON; LT. PRESSLY; | ) | |
| OFC. R. GOINS; OFC. BENNET; OFC. | ) | |
| LABONTE; OFC. CREASY; OFC. | ) | REPORT AND RECOMMENDATION |
| GARDO; OFC. WILLIAMS; OFC. | ) | |
| YOUNGBLOOD; OFC. JONATHAN | ) | |
| TALLY; SGT. NATION; OFC. B. JONES; | ) | |
| OFC KRISTY MCGRAW; AND | ) | |
| GREENVILLE COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I.  PROCEDURAL BACKGROUND

The plaintiff, Randy Valentine ("plaintiff/Valentine"),  filed this action under 42 U.S.C. §
1983[1] on February 25, 2005.  He filed an amended complaint on July 5, 2005. Plaintiff alleges that

his constitutional rights were violated. Defendants Richardson, Pressly, Goins, Bennett, LaBonte,

Creasy, Gardo, Williams, Youngblood, Tally, Nation, Jones, Does, McCraw and Greenville County

("defendants") filed a motion for summary judgment on July 30, 2007, pursuant to Rule 56 of the

Federal Rules of Civil Procedure along with a memorandum in support of that motion. (Document

#102). Because the plaintiff is proceeding pro se, he was advised on or about August 8, 2007,

pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th. Cir. 1975), that a failure to respond to the

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the
provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because
this is a dispositive motion, the report and recommendation is entered for review by the District
Judge.

defendants' motion for summary judgment with additional evidence or counter affidavits could result in dismissal of his complaint. The plaintiff filed a response in opposition on October 15, 2007.

The court entered an order on November 7, 2007, giving both parties ten days to supplement their positions to develop the issue of where plaintiff was placed upon his return from Greenville Hospital and the reason for the placement. Plaintiff and defendants filed a response on November 19, 2007.

## I. DISCUSSION

### A. ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

The plaintiff alleges that his constitutional rights were violated by these defendants because of numerous allegations. The following is a synopsis of plaintiff's allegations as to defendants Nation, B. Jones, Doe, Kristy McCraw, D. Richardson, Pressly, R. Goins, Bennet, Labonte, Creasy, D. Gardo:

> Plaintiff alleges that while a pretrial detainee at the Greenville County Detention Center ("GCDC"), several officers employed by the GCDC entered his cell and "brutally assaulted him in a vicious manner by shooting the plaintiff with stun guns, striking him with billy clubs, beating him with their fist, kicking him with boots on, and choking him while plaintiff was defenseless and helpless." (Amended complaint, p. 5). Plaintiff alleges that he was beaten unconscious by the officers during this "brutal and atrocious attack." (Amended complaint, p. 5). Plaintiff asserts that defendant Richardson witnessed the officers brutally and atrociously assaulting plaintiff without need and did nothing to curtail the actions. Plaintiff alleges that as a result of this attack, the stress caused him to have violent seizures and he was drug to medical. Plaintiff alleges that as a proximate result of the assault, he was taken to the Greenville Memorial Hospital on June 8, 2003, for treatment. Plaintiff alleges that on June 10, 2003, while he was restrained in the hospital bed with regulation hospital restraints, "Officer Pressly, without written or verbal authorization from the

2

plaintiff's doctor had the hospital regulations restraints removed from the plaintiff's person and he put metal handcuffs on the plaintiff to restrain him to the hospital bed." Plaintiff contends that defendants Goins, Richardson, and Bennet did nothing to curtail the plaintiff from being restrained in the hospital bed in a four point position with metal hand cuffs and metal shackles without doctor's authorization. Plaintiff alleges that defendant McCraw assured the hospital staff that plaintiff would be placed in the medical wing upon return to the GCDC but defendants Tally and Gardo in conspiracy with defendant McCraw placed the plaintiff in a rubber room cell with no toilet, no toilet paper, no bed, no mattress, and no pillow or hygiene items for over 72 hours.

Next, plaintiff asserts that on June 16, 2003, defendants Tally, Goins, Bennet, Williams, and Creasy acted in conspiracy with plaintiff's attorney to bring plaintiff to see him against his will. Plaintiff contends that these defendants entered his cell in riot gear and brutally assaulted him by hitting him with billy clubs, punched him, kicked him in the rib area with their boots, and slammed his head against the wall in a vicious manner for no reason. Plaintiff alleges that he was then taken out of his cell against his will and placed in a restraint chair and taken to see his lawyer after the assault. Plaintiff asserts that defendant Jones witnessed defendants Tally, Goins, Bennet, and Creasy brutally assault him and did nothing to curtail the "vicious attack." Plaintiff contends that he was examined by the SCDC and it was disclosed that he had suffered a rib injury which was "the proximate cause of being assaulted at the GCDC on June 16, 2003." (Amended complaint, p. 9). Plaintiff asserts that he was given a bill by the Greenville County EMS, when he was taken to the hospital as a pre-trial detainee after being assaulted.

Thus, plaintiff alleges cruel and unusual punishment by defendants and asserts that Greenville County is liable for the torts of its employees. Plaintiff alleges that defendant Officer Richardson was acting under color of state law and his actions constitute civil conspiracy by witnessing the alleged assault and not curtailing the action. Plaintiff alleges that by defendant Kristy McCraw not insuring that he was placed in the medical wing upon leaving the hospital was an act of gross negligence.

Plaintiff requests monetary damages against all defendants and requests defendants be required to pay the EMS bill issued to plaintiff.

(Amended complaint, Doc. #31).

As previously stated, defendants filed a motion for summary judgment on July 30, 2007, to which the plaintiff has responded.

The defendants argue that their motion for summary judgment should be granted because the use of force and/or restraints and handcuffs when hospitalized or transported was lawful and constitutionally permissible. Defendants assert that plaintiff suffered no constitutional deprivation in that his claim for failure to provide medical care for an alleged failure to place him in the medical wing is without merit. Further, defendants assert *de minimus* injury, qualified immunity, no *respondeat* superior liability, no liability on behalf of Greenville County, and no liability under state law.

## B.  STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with

"specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on

the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e) and <u>Celotex v. Catrett</u>, 477 U.S.

317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both

parties have had ample opportunity to explore the merits of their cases and examination of the case

makes it clear that one party has failed to establish the existence of an essential element in the case,

on which that party will bear the burden of proof at trial.  <u>See</u> Fed. R. Civ. P. 56(c).  Where the

movant can show a complete failure of proof concerning an essential element of the non-moving

party's case, all other facts become immaterial because there can be "no genuine issue of material

fact."  In the <u>Celotex</u> case, the court held that defendants were "entitled to judgment as a matter of

law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements

of his case with respect to which he has the burden of proof.  <u>Celotex</u>, 477 U.S. at 322-323.


## C.  LEGAL ANALYSIS APPLICABLE TO PRETRIAL DETAINEES

Allegations of deprivations regarding pretrial detainees are considered under the due process

clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the

Eighth Amendment.  <u>Cooper v. Dyke</u>, 814 F.2d 941 (4th Cir. 1987).  The rationale for this

distinction was explained in <u>Ingraham v. Wright</u>, 430 U.S. 651 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has
> complied with the constitutional guarantees traditionally associated
> with criminal prosecutions . . . the State does not acquire the power
> to punish with which the Eighth Amendment is concerned until after
> it has secured a formal adjudication of guilt in accordance with the
> due process of law.  Where the State seeks to impose punishment
> without such an adjudication, the pertinent constitutional guarantee

5

is the Due Process Clause of the Fourteenth Amendment (citations omitted).

A pretrial detainee may not be punished.  An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual."  Bell v. Wolfish, 441 U.S. 520 (1979).  Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime.  Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials.  If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld.  Bell, 441 U.S. at 538.

## D. ANALYSIS

In the complaint, plaintiff asserts that he was brutally attacked in his cell on June 7, 2003, causing him to have a seizure and resulting in hospitalization on June 8 until June 13, 2003.

Defendants assert that there are no incident reports for any events occurring with plaintiff on June 7, 2003. Defendants assert that plaintiff was taken to the hospital on June 8-June 13, 2003. Defendants argue that the hospital records for the admission on June 8, 2003, confirm that plaintiff had no physical injuries consistent with any type of assault as the hospital assessment notes indicate no apparent trauma. Defendants argue that had the plaintiff suffered any type of assault on June 7, 2003, an incident report would confirm that encounter and plaintiff would have had signs and symptoms of trauma when he was seen in the emergency room on June 8, 2003. Defendants assert plaintiff was admitted to the hospital on June 8, 2003, due to seizure history. Defendants submitted

the hospital records which reveal that plaintiff had a "prolonged seizure at the Detention Center" and was brought to the emergency room "where he had at least three or four minutes of seizing here." Thus, defendants argue that plaintiff's allegations regarding an assault on June 7, 2003, are without any basis.

Plaintiff has failed to show that he was subjected to excessive force on June 7, 2003. A review of the hospital records submitted by both defendants and plaintiff reveal plaintiff had no trauma or edema present upon admission on June 8, 2003. Had plaintiff been "brutally assaulted" and beaten unconscious by being struck with billy clubs, beaten with the officers' fists, kicked with boots, and choked, as alleged, there would have been evidence the next day. There is no record of any bruising or injuries from the alleged assault. An inmate must satisfy both a subjective requirement and an objective requirement in order to prove that prison officials violated his constitutional rights through use of excessive force. To satisfy the subjective requirement, he must show that the force used by the corrections officers "inflicted unnecessary and wanton pain and suffering." Hudson v. McMillan, 503 U.S. 1, 6 (1993). In analyzing the subjective requirement, four factors must be balanced to determine whether the prison officials acted "maliciously and sadistically for the very purpose of causing harm" as set forth in Whitley v. Albers at 320-21: (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat "reasonably perceived by the responsible officials," and (4) "any efforts made to temper the severity of a forceful response."

Additionally, an inmate must satisfy an objective requirement, ie. , he must show that the actions of the corrections officers, taken in context, were "objectively harmful enough" to offend "contemporary standards of decency." Id. at page 8. In determining whether the objective

7

component is satisfied, the force applied and the seriousness of the resulting injury against the need

for the use of force must be evaluated. Plaintiff has not met this burden. In addition, viewing the

facts in the light most favorable to the plaintiff, his injuries were <u>de minimis</u>. If a prisoner's injury

is <u>de minimis</u>, then  the prisoner's excessive force claim fails as a matter of law. <u>Norman v. Taylor</u>,

25 F.3d 1259, 1262 (4th Cir. 1994). Accordingly, it is recommended that this claim be denied and

dismissed.

Second, plaintiff alleges that while in the hospital, defendants violated his constitutional

rights by defendant Pressly removing his hospital restraints and placing him in metal cuffs and

shackles in a four point position. Defendants assert that during the hospital stay, plaintiff exhibited

aggressive behavior, refused medication, pulled out IV access, and urinated on an officer. Plaintiff

was diagnosed with postictal pyschosis. Defendants submitted the incident reports which revealed

that when Officer Tally removed plaintiff's soft restraints for him to use the bed pan and was

attempting to resecure them, plaintiff urinated on Officer Tally stating "see that is what you get."

(Supervisor summary report dated June 12, 2003, doc. # 56-11). Based on the report, defendant

Gardo successfully tied the restraint back "without further incident" while defendant Talley exited

the area to decontaminate. Defendant Nations states in his report that when he arrived at the hospital,

plaintiff was wearing leg irons and soft restraints on all four of his limbs. Defendant Nations states

in his report that at 2240 hours, he instructed the officers to remove the soft restraints from plaintiff's

arms and place handcuffs on both arms and to affix the cuffs directly to the bed. At 2347 hours,

defendant Nations reports, at the direction of Major Melton, he returned to GHS to make adjustments

to plaintiff's restraints. Plaintiff's hands were removed from the handcuffs and placed into flex cuffs

which were then affixed to two sets of leg irons and placed above his head and the leg irons were

attached to the frame of the hospital bed to prevent plaintiff from pulling his hands from above his head. The report reveals that Nurse Gail Wright checked the restraints. Defendants also submitted a copy of the incident report completed by Officer Gardo and Officer Tally who also reported that plaintiff urinated on defendant Officer Talley stating "See that's what you get."

The plaintiff alleges that he was subjected to cruel and unusual punishment when these defendants used excessive force against him by placing metal restraints on him in a four point position while in the hospital for punishment. In <u>Riley v. Dorton</u>, 115 F.3d 1159, 1166 (4th Cir. 1997), the Fourth Circuit Court of Appeals concluded that excessive force claims of pretrial detainees are governed by the Due Process Clause of the Fourteenth Amendment. Additionally, the proper analysis under the Fourteenth Amendment is "whether the force applied was 'in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" <u>Robinson v. Bush</u>, 2006 WL 1389822 (D.S.C.) quoting <u>Taylor v. McDuffie</u>, 155 F.3d 479, 483 (4th Cir. 1998).

Defendants submitted a copy of Greenville County Detention Centers' restraint policy, SOP Policy No. 3.1.12 at page 5 which states that restraints are to be used during transport in accordance with current transporting training. Defendants submitted a copy of page 57 of the transport training manual which provides that the nature of an injury, illness, or condition will determine the extent of restraints as are to be employed. Further, the training manual goes on to indicate that regardless of an inmate's medial condition some level of restraint will be required, i.e., handcuffs and/or ankle restraints. Thus, restraints used while transporting plaintiff to the hospital and while hospitalized was not a constitutional violation.[2]

---

[2] The parties do not differentiate between transportation and hospitalization.

The incident where plaintiff urinated on an officer while in the hospital was reported in the hospital records and defendants provided copies of the incident reports, affidavits from the officers and supervising officer concerning plaintiff urinating on Officer Talley while being treated at Greenville Memorial Hospital. There is not an issue of fact as to whether or not plaintiff urinated on Officer Talley. Defendant Nation in his report states that he went to the hospital and had plaintiff placed in the metal cuffs and returned in a little over an hour upon his supervisor's instructions and readjusted plaintiff's restraints removing the metal cuffs and placing the flex cuffs back on plaintiff's arms. Even though plaintiff has alleged pain and suffering due to the metal restraints as opposed to soft restraints, he has not alleged any serious injury as a result of the metal cuffs. The Fourth Circuit held in the case of Young v. Prince George's County, Maryland, 355 F.3d 751 (4th Cir. 2004),that "[t]o succeed on a claim of excessive force under the Due Process Clause of the Fourteenth Amendment, [a pretrial detainee] must show that [a] Defendant [ ] 'inflicted unnecessary and wanton pain and suffering.' " Id. (quoting Whitley v. Albers, 475 U.S. 312, 320, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)).  Based on the medical records submitted by both defendants and plaintiff, plaintiff exhibit aggressive behavior, refused medication, pulled out his IV access, and urinated on an officer. From the evidence submitted, the force applied was in a good faith effort to maintain or restore discipline and was not done maliciously and sadistically for the very purpose of punishing the plaintiff. Also, any "injury" suffered was de minimis. Accordingly, it is recommended that plaintiff's claims with regard to the use of handcuffs and/or restraints when transported or hospitalized be denied.

Third, plaintiff has alleged that defendants violated his constitutional rights by failing to place him in the medical wing upon return to the GCDC after Kristy McCraw from GCDC had informed

the hospital staff that he would be placed in the medical wing.

Defendants argue that this allegation does not rise to the level of a constitutional deprivation unless and until it is demonstrated that detention officers were deliberately indifferent to a serious medical and/or health care need of the plaintiff. Defendants assert that whether or not plaintiff was taken to the medical wing or not is not deliberate indifference. Defendants supplemented their response and submitted the affidavit of James M. Dorriety who is the Director for the Department of Public Safety for Greenville County and has administrative, management, and supervisory responsibilities regarding the GCDC. Defendants contend plaintiff was placed in Cell MHC04, which is a padded cell and allows for constant observation via camera of an inmate. Defendants assert that plaintiff was placed in a holding cell on June 13, 2003, at 9:23 p.m. upon his return from the hospital. He was then placed in the padded cell at 2:15 a.m. on June 14, 2003. Defendants state plaintiff remained in Cell MHC04 until June 17, 2003, when he was released to the South Carolina Department of Corrections with the exception of being removed on June 16, 2003, for a video court appearance and was subsequently taken to the hospital for a court ordered blood culture for HIV and a hepatitis profile because he urinated on an officer on June 12, 2003. Dorriety also attached a copy of the Inmate Cell Movement History Inquiry to his affidavit which he attests is a document maintained by the GCDC in the ordinary course of its operations. Defendants assert plaintiff was placed in the padded cell for precautionary measures in light of his behavior and the discussions between the GCDC personnel and the plaintiff's treating physician. Defendants assert plaintiff was asserting aggressive behavior, refusing medication, pulling out IV access, and urinating on an officer while at the hospital. He was diagnosed with postictal psychosis and was considered a high risk patient posing risk to medical providers and the physician suggested he be discharged back to the

11

GCDC. Defendants assert that the discharge instructions did not indicate that plaintiff needed to be housed in the medical unit.

In the case of <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," <u>Id</u>., quoting <u>Gregg v. Georgia</u>, 428 U.S. 153, 169-73 (1976). The Court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," <u>Gregg v. Georgia</u>, supra, at 173, (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

<u>Estelle</u>, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

<u>Estelle</u>, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the Court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851. Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

In order to establish a prima facie case under the Eighth Amendment, plaintiff must show that, objectively assessed, he had a "sufficiently serious" medical need to require treatment. Brice v. Virginia Beach Correctional Center, 58 F.3d 101, 104 (4th Cir. 1995) (citing cases). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.' " Coppage v. Mann, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting Monmouth Co. Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 450 U.S. 1041 (1981)). Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying Daniels vs. Williams and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct.").

13

Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law.  DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989).  Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise."); Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart v. Villar, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal). Thus, even if the plaintiff were able to show that defendants' actions somehow constituted medical negligence or medical malpractice, these are not actionable under 42 U.S.C. § 1983.

"Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F. 2d 811, 817 (1st Cir. 1988).  Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994).  Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation.  See Smart v. Villar, 547 F. 2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986).  Mistakes of medical judgment are not subject to judicial review in a § 1983 action. Russell v. Sheffer, 528 F. 2d 318, 319 (4th Cir. 1975).

14

In the present case, as plaintiff's allegations are construed to be an allegation of medical indifference, this claim fails. The plaintiff has pointed to nothing in the medical record or filed any affidavits that indicate there was any lack of treatment or that any lack of treatment caused him to suffer any serious or life threatening medical problems. Further, a review of the discharge summary from GHS reveals that plaintiff was released on a regular diet and unrestricted level of activity. Hence, the plaintiff has failed to state any specifics concerning this allegation. Additionally, a review of the hospital discharge summary reveals the following notation: "because the patient is clearly a high-risk patient, as far as we are concerned here, and they [ Kristy McCraw and the prison] believe that he may be better off being transferred back to the prison. Of note, the patient has been refusing all of his p.o. medication. With this in mind, the patient is therefore being discharged back to the prison officers. They do have a medical wing and Ms. McCraw promised that they would supervise this patient." There were no instructions that plaintiff needed to be placed in the medical wing only that he would be supervised. Plaintiff alleged in his complaint that he was placed in a rubber room when he was returned from the hospital for seventy-two hours without cause. As previously noted, defendants assert plaintiff was placed in a padded cell for observation and precautionary measures for his safety. Defendants submit plaintiff was placed in this particular cell so that there could be constant visual observation by cameras  due to his recent aggressive behavior and the refusal to take his medication. Further, as stated above, the doctor at Greenville Hospital stated plaintiff was considered "a high-risk patient" and he was assured plaintiff would be supervised upon return to the prison. Thus, there is no evidence that plaintiff was placed in a "rubber-room" or padded cell for the sole purpose of punishment but rather for observation and precautionary measures. Based on these reasons, plaintiff's claims of medical indifference, if any, must fail as a matter of law. Thus, the

15

undersigned recommends that defendants' motion for summary judgment be granted as it relates to the plaintiff's claims of medical indifference. Furthermore, there is no liberty interest created in custodial classifications, <u>Meachum v. Fano</u>, 427 U.S. 215, 225 (1976).

Fifth, plaintiff alleges that he was assaulted and placed in a restraint chair because he refused to come out of his cell to see his attorney. Defendants argue that on June 16, 2003, detention officers attempted to get the plaintiff to come out of his cell so he could be taken to court. Defendants assert that plaintiff refused to comply with their request and, therefore, plaintiff was removed from his cell and placed in a restraint chair. Defendants assert that the entire event was captured on video and previously submitted a copy to the court. Defendants argue that the video confirms that the use of force by detention officers in that maneuver complied fully with the considerations set forth in <u>Whitley v. Albers</u> which govern the use of force in a prison and/or jail setting.

Previously, plaintiff asserted that defendants did not disclose the video tape during the discovery process in which defendants did not deny that such tape existed. Plaintiff stated to "see defendants responses to plaintiff's request for admissions dated 8-22-05, number 4." (Doc. #62, p.3). The Honorable Henry M. Herlong, Jr., ruled in his Order of September 12, 2006, that the court would not consider the video because it was unclear whether plaintiff received a copy of the video in that the defendants' certificate of service accompanying their first motion for summary judgment was incorrect. It does not appear that defendants have provided any documentation to the court since Judge Herlong's order to show that they have served a copy of this video on plaintiff. Thus, the undersigned will not consider the video.

However, defendants submitted the affidavit of James Dorriety the Director for the Department of Public Safety, Greenville County and who has administrative, management, and

supervisory responsibilities regarding the Greenville County Detention Center. Dorriety asserts that

he reviewed the detention center's file on plaintiff and attests that on June 16, 2003, plaintiff was

required to appear in video court but refused to be transported to meet with his attorney for court

purposes. Dorriety attests that the detention officers made several attempts to request plaintiff to

comply to be handcuffed and transported to appear in video court but plaintiff refused to be

transported for his appearance. Dorriety avers that a forcible cell extraction was performed. Thus,

the cell extraction was necessary in that plaintiff refused to comply with the officers' requests. It is

further noted that plaintiff attached a copy of the Greenville County Detention Center Medical

Clinic's progress notes to his response in opposition which reveal that on June 16, 2003, medical was

called to check plaintiff's restraints. It was noted that plaintiff was sitting in the restraint chair and

he had good circulation in all extremities allowing two fingers to fit between the restraints and the

skin. There is no entry recorded that plaintiff complained of any injury or pain when the nurse

examined him while in the restraint chair. Plaintiff has not alleged or shown any serious injury as

a result.[3]

The undersigned has considered the merits of the case, the affidavits, and the evidence

submitted and concludes that the plaintiff has failed to show that defendants violated any of his

constitutional or statutory rights under 42 U.S.C. §1983 as to cruel and unusual punishment of being

placed in the restraint chair.

The Eighth Amendment protects against the use of excessive force by prison officials who

inflict "cruel and unusual punishment" on an inmate.  This amendment is applied to the states

---

[3] Previously reviewed video submitted by the defendants supports defendants' position. Therefore, considering the video, summary judgment is appropriate.

through the Fourteenth Amendment and protects state inmates from excessive force by correctional officers. Because prison officials must act "in haste, under pressure, and frequently without the luxury of a second chance," deliberate indifference is not a sufficiently rigorous standard. Whitley v. Albers, 475 U.S. 312 (1986). The courts have consistently recognized that prison officials are entitled to use force, and that not every action taken by prison officials amounts to excessive force. Stanley v. Hejirika, 134 F.3d 629 (4th Cir. 1998).  "After incarceration, only the unnecessary and wanton infliction of pain constitutes . . . cruel and unusual punishment forbidden by the Eighth Amendment."  Whitley, 475 U.S. at 319.

An inmate must satisfy both a subjective requirement and an objective requirement in order to prove that prison officials violated his constitutional rights through use of excessive force. To satisfy the subjective requirement, he must show that the force used by the corrections officers "inflicted unnecessary and wanton pain and suffering."  Hudson v. McMillan, 503 U.S. 1, 6 (1993). In analyzing the subjective requirement, four factors must be balanced to determine whether the prison officials acted "maliciously and sadistically for the very purpose of causing harm" as set forth in  Whitley v. Albers at 320-21: (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat "reasonably perceived by the responsible officials,"  and (4) "any efforts made to temper the severity of a forceful response."

Additionally, an inmate must satisfy an objective requirement, ie. , he must show that the actions of the corrections officers, taken in context, were "objectively harmful enough" to offend "contemporary standards of decency."   Id. at page 8.  In determining whether the objective component is satisfied, the force applied and the seriousness of the resulting injury against the need for the use of force must be evaluated. Plaintiff has not met this burden.

From the evidence presented, it is appropriate to conclude that the amount of force used to have plaintiff comply with orders was reasonable and minimal. It cannot be concluded that there is

a genuine issue of material fact regarding the use of force by the prison guards "maliciously for the very purpose of causing harm." Williams v. Benjamin, 77 F. 3d 756 (4th Cir. 1996). Accordingly, it is recommended that defendants' motion for summary judgment be granted as to the allegation of cruel and unusual punishment of being placed in the restraint chair. Additionally, plaintiff has not alleged or shown any serious injury. The lack of any serious injury compels the conclusion as a matter of law that the plaintiff suffered no constitutional deprivation when he was restrained by the defendants. See Taylor, 155 F.3d at 484.


### E.  GREENVILLE COUNTY

Defendants assert that there is no liability to the plaintiff under §1983 for any acts or omission on behalf of Greenville County. Defendants argue that to invoke liability under §1983, there must be proof and evidence to establish that a governmental policy or custom caused the plaintiff's injury and that some deliberate conduct on the part of the municipality entity was the "moving force" behind the alleged injury. Bd. Of Cty. Commissioners of Bryan County v. Brown, 520 U.S. 297 (1997). Defendants argue that there is no showing that any policy or custom of Greenville County was unconstitutional and/or was a moving force behind any alleged injuries claimed or suffered by the plaintiff.

Defendants attached a copy of a document to their memorandum entitled County of Greenville S.C.–Greenville County Department of Public Safety , Greenville County Detention Center Division Training Section/ Transport Training Manual. In this manual, certain procedures are set out as to how to handle inmates while being transported and the procedure for medical services at Greenville Memorial Hospital's Emergency Room. (See Doc. # 56-8).  As plaintiff has not shown that any policy or custom of Greenville County caused his alleged constitutional violation, it is recommended that defendants' motion for summary judgment be granted as to Greenville County.

Id.

## F.  PENDENT JURISDICTION

Assuming plaintiff's § 1983 claim is dismissed by this Court and plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

## G.  RESPONDEAT SUPERIOR

Defendants argue to the extent plaintiff alleges a claim based upon respondeat superior, the action fails. Defendants argue liability under §1983 cannot be based upon respondet superior. Monell v. Dept. of Social Services, 436 U.S. 658 (1978).

Under the doctrine of respondeat superior, an employer or supervisor is not liable for the acts of their employees, absent an official policy or custom which results in illegal action.  See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978) and Fisher v. Washington Metro Area Transit Authority, 690 F. 2d 1133, 1142-43 (4th Cir. 1982).  The employer or supervisor may only be held liable if the plaintiff can show that they had actual knowledge of the specific danger, but were deliberately indifferent to the plaintiff's needs despite their knowledge of this danger, Slakan v. Porter, 737 F. 2d 368 (4th Cir. 1984). Thus, any claims plaintiff alleges based upon respondeat superior should be dismissed.

## H.  DE MINIMUS

Defendants argue that plaintiff has suffered no real injury and he should not be allowed to pursue a §1983 claim based upon allegations of de minimus injuries.

An inmate must show more than de minimis pain or injury.  Id. at 9.  Although a plaintiff need not show a significant injury, the court in Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994), cert. denied, 513 U.S. 1114 (1995), held that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an excessive force claim if his injury is de minimis." Plaintiff has not shown more than de minimis pain or injury.


## IV. CONCLUSION

Based on the above stated reasons, it is **RECOMMENDED** that the motion filed by the defendants for summary judgment (document #102) be **GRANTED.**

Further, it is RECOMMENDED that any outstanding motions be **DENIED** based on the above reasons.


Respectfully submitted,


s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

December 3, 2007
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**